ARKANSAS-LOUISIANA GAS COMPANY *v.* PHILLIPS.

4-5067

Opinion delivered May 30, 1938.

*Jim Cole, House, Moses & Holmes* and *H. B. Solmson, Jr.,* for appellant.

*Curtis R. DuVall* and *Griffin & Griffin,* for appellee.

HUMPHREYS, J. Appellee brought this suit in the circuit court of Grant county against appellant for wrongfully cutting off the gas from her apartment on the 6th day of July, 1936, thereby depriving her of the use of hot water and hot packs to treat her left arm on which an operation had been performed by her physician in an effort to cure rheumatoid arthritis of her wrist with which she was afflicted, alleging that the lack of hot water and hot packs prescribed by her physician caused her to suffer great pain and allowed the adhesions he had broken in the joint to knit together again without accomplishing the purpose for which they had been broken. Appellant filed an answer denying that it had wrongfully cut off the gas or that the lack of hot water and hot packs in which to keep her arm after the operation added to her pain and suffering or was the proximate cause of the stiff joint or ankylosis of her wrist, but was the natural result of the disease with which she was afflicted.

Testimony was introduced upon the issues joined, and the cause was submitted to the jury upon evidence

adduced by the respective parties and instructions of the court resulting in a verdict and judgment against appellant for $1,000, from which is this appeal.

Appellant requested an instructed verdict in its favor at the conclusion of the testimony on the ground that there was no substantial evidence introduced by appellant tending to show that it wrongfully cut off the gas or that the discontinuance of the gas service caused her to endure great pain and suffering or was the proximate cause of her stiff joint.

The record reflects that the contract for gas service signed by appellee required her to comply with appellants rules and regulations, one of which was to pay her gas bills monthly, and upon failure to do so, appellant should have the right to cut off the gas. Also that she failed to pay her bills and was notified that unless she paid her past-due bills on June 10, 1936, her gas would be cut off.

Appellee testified that when she received the notice she went to see appellant and explained to it that she only had $5 which amount she was willing to pay on the bill provided the balance due would be added to her current bill for the next month which would become due on July 17, 1936; that it accepted her offer, receipted her for $5 and noted on the receipt that the balance would be due July 17, 1936; that she explained to it that she was going to have an operation on her left arm, and would need the gas to provide hot water and hot packs for use on her arm after the operation was performed. She further testified that after the operation was performed on the morning of July 6, 1936, the gas was cut off so that she could not use hot water and hot packs on her arm to prevent swelling and pain and suffering during the time of her recovery. She further testified that the parties living in the other part of the apartment building were away working, and that she had no way to get hot water and hot packs after the gas was cut off, and that she received no notice that same would be cut off before her arm was operated upon. She further testified that she could not move or exercise her wrist as she was directed to by the physician because it was so painful to

exercise the same without the use of hot water and hot packs, and that being unable to exercise her arm as directed the broken adhesions grew back together quickly and left her wrist in a stiff condition, just as if she had no joint.

The physicians who had treated her did not testify in the case, but she introduced Dr. J. A. Burks who had been her father's family physician and who examined her the night before he was to testify for the first time and found that she had a complete ankylosis of the wrist which meant that the bones in the wrist had united and become a solid bone, and that her arm would always be and remain in its present condition; that he thinks hot water and hot packs cure rheumatoid arthritis, but that, in order to do so, you have to keep breaking up the bony union from time to time; that hot packs were given patients to relieve the pain and suffering and reduce the swelling; that while hot packs would not cure rheumatoid arthritis as such applications would not remove the cause, hot water and hot packs are used to relieve the pain and suffering and aid in the cure; that hot moist packs should be used about every hour after the operation as they tend to increase the circulation and allay the pain. Witness was then asked if appellee would have had a chance for complete recovery if she had been properly treated, and answered that he thinks she would have had a chance, but refused to state that under proper treatment the cure would have been effective.

Appellant introduced testimony tending to show that the time for payment of the gas bill had been extended to June 17 and not to July 17, and that after giving her notice it cut the gas off on July 6, 1936.

It, also, introduced Dr. Val Parmley who testified that he had specialized in traumatic surgery, and had made a particular study of the structure of bones; that he had had experience in the treatment of joints that had been stiffened by arthritic conditions; that the stiffening in the joint in the particular instance was caused by bony new growth due to an inflammatory process, and that ankylosis is brought about by inflammation of the joint

due to infection; that the application of hot packs to the arm after the adhesions had been broken would not cure the disease as there is nothing in heat that will or will not cause a joint to become stiff; that the only purpose in its use was to prevent the swelling and consequent pain; that regardless of whether hot packs were applied the stiffening process would have continued in the present case.

The issue of whether or not appellant accepted $5 as a payment on its bill and extended the time for further payment to July 17 was, under the conflict in the testimony, clearly one for the jury and being submitted under correct instructions appellant is bound by the verdict against it on that issue.

It may be said that the issue on the question of whether the failure to secure hot water and hot packs for treatment was the proximate cause of the stiff joint or ankylosis of the wrist was a matter more or less of speculation under the evidence of appellee's own physician who testified that he was not certain that a cure would have been affected by the use of hot water and hot packs after the operation, but there can be no question under the evidence that, after the operation, she suffered a swelling of the arm and much pain by being deprived of the use of hot water and hot packs. Both physicians testified, in substance, that hot water and hot packs would prevent swelling and pain. It may be said then that under the evidence it is practically undisputed that on account of the failure to get hot water and hot packs she suffered much pain during the time she was ill. Pain and suffering was one of the grounds upon which her suit was based and under the undisputed testimony the jury had a right to find that she was entitled to damages for the pain and suffering she endured. It is not claimed that the verdict is excessive.

It is true appellant claims that the judgment should be reversed because the court refused to give its instruction No. 3, which is as follows:

"You are instructed that the plaintiff (appellee) can not recover punitive damages from the defendant in this case."

At no time during the trial was punitive damages mentioned, and no testimony was introduced showing that appellee was entitled to punitive damages, and appellee made no request for an instruction to that effect. It was not an error to refuse to instruct relative to punitive damages when that question was not raised before the jury.

The appellant contends that the court erred in refusing to give its requested instruction No. 8, which is as follows: ·

"You are instructed that under the contract between the plaintiff and defendant the defendant was authorized to discontinue its gas service for the nonpayment of gas bills."

This instruction was peremptory in its nature, and it would have been improper to refuse it had the original contract been the only evidence in the case for the contract provided or at least one of its rules and regulations provided that appellant had a right to discontinue its gas service for the nonpayment of gas bills. But there was other evidence in the record tending to show the time was extended for paying the balance due on her gas bills until July 17, 1936, as there can be no question under the law that appellant could waive the right to cut off gas by extending the time for the payment of the fees.

Appellant contends that the court erred in giving instruction No. 3 requested by appellee, but without setting it out we find no inherent error in it, and when read in connection with instruction No. 7 requested by appellant and given by the court the issues covered by them were correctly submitted to the jury.

Finding that the court correctly instructed the jury relative to the issues involved in the case, and that there is substantial evidence to support the verdict, the judgment is affirmed.

. GRIFFIN SMITH, C. J., and SMITH, J., dissent.